IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GULF COAST VISUALS MANAGEMENT COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 2:17-cv-121-TMP ) |
| EDWARD J. WEDELSTEDT, individually; EDWARD J. WEDELSTEDT, as Personal Representative of THE ESTATE OF LYNDA ENTRATTER, deceased; SOUTHERN STAR, LLC, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

This action is before the court on the motion (doc. 19) filed by the defendants on August 14, 2017, seeking either to strike or dismiss the amended complaint (doc. 16) filed by the plaintiff on July 31, 2017. Defendants also have filed a motion to stay the scheduled deadlines in the case (doc. 31).[1]

On the same day, January 23, 2017, this action was removed to this court by the defendants and they filed their answer to the complaint originally filed in state court. The original complaint, filed in the Circuit Court of Jefferson County,

---

[1] A motion for summary judgment filed by the plaintiff is not discussed in this Memorandum Opinion.

Alabama, on December 22, 2016, alleged that a dispute existed between the plaintiff and one or more of the defendants as to the purported ownership of a parcel of real property located in Jefferson County, Alabama. Alleging that it had a contract to purchase the disputed real estate, toward which it was paying $1,500.00 per month to consummate the purchase, plaintiff Gulf Coast Visuals Management Company, LLC ("Gulf Coast Visuals") pleaded claims for equitable relief in the form of quiet title, specific performance, and an equitable lien against the real property. (Doc. 1-1). Several months after the removal and filing of the answer by the defendants, the plaintiff filed, without prior leave of court, an amended complaint greatly expanding the nature of the controversy and the claims being alleged. It is this amended complaint that the defendants move to strike or dismiss.

In the amended complaint, the plaintiff alleges not just a contract to purchase real property in Jefferson County, Alabama, but a separate and much broader contract to purchase the stock in several companies owned purportedly by the Estate of Lynda Entratter ("the Estate"). Defendant Wedelstedt is the personal representative of the Estate, which was formed in Georgia, where the decedent lived prior to her death. The plaintiff alleges that in 2010, it entered into a series of contracts with the Estate to manage several businesses owned by the Estate under a "Management Contract." At the same time, the plaintiff and the Estate (through

2

Wedelstedt) entered into a separate "Purchase Contract" that gave Gulf Coast Visuals the option to purchase the stock of several companies owned by the Estate. On May 2, 2011, the plaintiff exercised its option, and on October 7, 2011, the sale of stock was closed.[2] At the closing, Gulf Coast executed a promissory note in the amount of $1,593,662.72, calling for monthly payments of $20,000. The note was secured by a pledge of stock in various companies owned by Gulf Coast Visuals.

Filed on July 31, 2017, the amended complaint goes on to allege:

> 11. Contemporaneously with the Stock Sale, Wedelstedt agreed to sell the Birmingham store (as alleged by Gulf Coast in this action), in a transaction calling for payments of $1,500 per month under the real estate note at issue in the Alabama Suit. The amortization schedule for the Real Estate Sale ends at the same time as amortization schedule for the Stock Sale. Gulf Coast has made all the $1,500 payments.
>
> 12. Thus, each month, Gulf Coast pays the Estate (the checks are sent to Mr. Wedelstedt) Payments of $21,500 per month.

(Doc. 16). Paragraph b. of the opening section of the amended complaint further states that the sale of the real estate was "secured by payment by Gulf Coast of

---

[2] Although not clear, it appears that the negotiation and execution of the Management and stock Purchase Agreements, as well as the closing of the sale of the stock, occurred somewhere other than in Alabama, possibly in Michigan. In any event, the Estate appears to be in Georgia, Wedelstedt is identified as a resident of Colorado, and the plaintiff is a Georgia limited liability company. Only Southern Star LLC is said to be an Alabama limited liability company and at least at one time the owner of the Alabama real estate that is the subject of the action as originally filed.

$1,500 per month pursuant to an *unsigned* promissory note made by Gulf Coast ("RE Note")." (Doc. 16, at 2) (italics added).

Gulf Coast Visuals alleges that it has made all payments due so far under both promissory notes, totaling $21,500 per month, but it also alleges that it is concerned that, in fact, the Estate does not own the stock it purported to sell to the plaintiff. Due to that concern, on June 27, 2017, counsel for the plaintiff delivered a letter to counsel for the defendants demanding certain specified assurances that the Estate owns the stock that is the subject of the Purchase Agreement and that it is capable of conveying the stock to Gulf Coast Visuals free of any liens or encumbrances. Finally, the amended complaint alleges that when the defendants failed to provide reasonably satisfactory assurances, the amended complaint was filed to assert claims and causes of action arising out of the stock sale, not just the sale of the Alabama real estate.

The amended complaint greatly expanded the scope of this action by adding eleven new claims, as follows:

> Count IV—**Declaratory Judgment** that the plaintiff is entitled to reasonable assurances of the Estates ability to comply with the stock Purchase Agreement;
>
> Count V—**Breach of Contract** of the Purchase Agreement;
>
> Count VI—**Suppression** of materials facts to induce plaintiff to enter into the Purchase and Management Agreements;

Count VII—**Fraud and Fraudulent Suppression** relating to required disclosures under the Purchase Agreement;

Count VIII—**Securities Fraud** in that the defendants made material misstatements and omissions relating to the sale of stock to the plaintiff in violation of state and federal law;

Count IX—**Civil Theft and Conversion** in that the moneys paid by the plaintiff for the purchase of the stock has been diverted to Wedelstedt and that a conspirator with Wedelstedt has converted money and assets from the plaintiff while employed by the plaintiff;

Count X—**Fraudulent Transfer** in that Wedelstedt has used moneys paid to the Estate for purchase of the stock for the benefit of other entities in order to avoid the IRS and others;

Count XI—**Misappropriation of Funds** in that the defendants have taken the plaintiff's money while refusing to honor the stock Purchase Agreement;

Count XII—**Civil Conspiracy** that defendants conspired among themselves and with other to defraud the plaintiff;

Count XIII--**Wrongful appropriation of corporate opportunity, constructive trust and accounting** in that the defendants, together with a conspirator (Olsafsky), have diverted plaintiff's assets and taken money without the intent to deliver the stock covered by the Purchase Agreement; and

Count XIV—**Conspiracy to misappropriate assets of corporation, and for accounting and appointment of receiver** in that the defendants, together with a conspirator (Olsafsky), have diverted plaintiff's assets to its detriment.

The defendants filed their current motion to strike the amended complaint or, alternatively, to dismiss it on August 14, 2017. Plaintiff filed its opposition to

the motion on August 28 (Doc. 21), and the court heard oral arguments on February 6, 2018.

**I. Motion to Strike**

The defendants argue that the amended complaint is due to be stricken because it failed to comply with Rule 15 of the Federal Rules of Civil Procedure and because it contains immaterial, impertinent, and scandalous allegations, making it subject to the provisions of Rule 12(f). Plaintiff admits that it filed the amended complaint without first seeking leave to do so, but argues that the court's Rule 16(b) scheduling order granted implicit leave to amend until the July 31 deadline stated in the scheduling order. Alternatively, the plaintiff contends that the court may still treat the amended complaint as containing an implied motion for leave and the court should address whether to allow the amendment under the liberal standards of Rule 15(a). Finally, the plaintiff denies that the allegations of the amended complaint are "immaterial, impertinent, and scandalous," but instead go to the heart of their claim of fraud and anticipatory breach of the stock Purchase Agreement.

*a. Rule 15(a) and Seeking Leave to Amend*

Rule 15(a) of the Federal Rules of Civil Procedure establishes the procedure through which pleadings in federal court may be amended. It states in part:

(a) AMENDMENTS BEFORE TRIAL.

(1) *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Plaintiff does not dispute that its amended complaint does not fit either Rule 15(a)(1)(A) or (B). The amended complaint was filed well more than 21 days after service of the original complaint and, indeed, after the defendants filed their responsive answer. The amendment to the complaint is allowable, therefore, only under Rule 15(a)(2). Because there is no indication that the defendants have consented to the amendment, leave of court is necessary.

The deadline for amending pleadings provided in the court's Rule 16(b) scheduling order does not dispense with the need to seek leave to amend. Although a deadline for amending pleadings in the scheduling order establishes an outside limit for seeking leave to amend without a showing of good cause, amendments sought within the deadline still must meet the requirements of

7

Rule 15(a).[3] The court of appeals consistently points to the language of Rule 15(a), even when a scheduling order has established a deadline for amendments. For example, the court has written:

> District courts are required to enter a scheduling order that limits the time to join other parties and to amend the pleadings. Fed.R.Civ.P. 16(b). When a party's *motion to amend* is filed after the scheduling order's deadline for *such motions*, the party must show good cause for why leave to amend should be granted. *See Sosa*, 133 F.3d at 1419. A district court may deny a motion to amend on "numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir.2003) (citation and quotations omitted).

*Kendall v. Thaxton Road. LLC*, 443 F. App'x 388, 393 (11th Cir. 2011) (internal emphasis added). Thus, the entry of a scheduling order setting an outside deadline

---

[3] See the Eleventh Circuit's discussion in *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998), concerning the different standards applicable to amendments offered before and after the expiration of deadlines to amend in a scheduling order. "If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well. However, because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." *Id.* at 1419. It is clear, however, that under either scenario, a motion for leave to amend under Rule 15(a) is required to amend the complaint. *See also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1366 (11th Cir. 2007) ("Pursuant to Fed.R.Civ.P. 15(a), a party seeking to amend its complaint… after a responsive pleading has been filed, may amend the complaint 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.' Fed.R.Civ.P. 15(a). However, where a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted.");

for the filing of motions for leave to amend the pleadings does not provide authority for an amendment. A motion for leave to amend pursuant to Rule 15(a) must still be filed.

Although a motion for leave to amend should be freely granted when justice requires, Fed.R.Civ.P. 15(a), there are many reasons for refusing a motion for leave to amend. "'Although "[l]eave to amend shall be freely given when justice so requires," a motion to amend may be denied on "numerous grounds" such as "undue delay, undue prejudice to the defendants, and futility of the amendment."' *Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (quoting *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir.1992))." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003). The reason for requiring the filing of a motion for leave to amend a complaint is to enable the court to review whether allowing the amendment will disturb the subject-matter jurisdiction of the court or otherwise create undue delay, undue prejudice, or simply be futile because the amendment fails to state a claim.

### b. Effect of Failing to Seek Leave to Amend

Given that the plaintiff did not seek leave to file the amended complaint, it is without legal effect and may be stricken. Quoting Wright and Miller, 6 FEDERAL

PRACTICE & PROCEDURE, the Eleventh Circuit has explained that unauthorized amendments are nullities, with no legal effect. The court wrote:

> Given the district court's apparent view that [the plaintiff's] delay in asserting the additional claims was without excuse, its resolution of this issue was consistent with general principles applicable to Rule 15. As Wright and Miller explain,
>
>> In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, *it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval*. However, some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend *would have been granted had it been sought* and when it does not appear that any of the parties will be prejudiced by allowing the change. Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of rule 15(a) and the general desirability of minimizing needless formalities.
>
> 6 FEDERAL PRACTICE & PROCEDURE § 1485 at 421 (1971) (emphasis added) (footnotes omitted). Here, the district court acted properly in treating [the plaintiff's] supplemental pleading as a nullity, particularly since it was inclined to deny any motion for leave to amend that [the plaintiff] might have filed.

*Hoover v. Blue Cross & Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988) (footnote omitted and italics in original). Thus, the amendment filed in this case without leave of court can be treated by the court as a nullity, with no legal effect or recognition by the court. *See also* 6 Charles Alan Wright, et al., FEDERAL

PRACTICE & PROCEDURE, Civ. § 1484 (3d ed. 2015 Westlaw); *Sibille v. Davis*, No. 3:13-CV-566-WKW, 2016 WL 1171879, at *2 (M.D. Ala. Mar. 25, 2016).

Even so, as the court of appeals pointed out, some courts undertake to assess whether leave to amend *would have been* granted had a proper motion for leave been filed. In this case, the court has serious doubts that a motion for leave to amend can be granted because doing so might be futile due to lack of personal jurisdiction over the defendants. The court has concerns whether it can properly exercise personal jurisdiction over the defendants with respect to the stock Purchase Agreement claims set out in the amended complaint. That assessment, however, must await the filing of a motion for leave to file an amendment to the complaint and the defendants' response to it.

Personal jurisdiction exists in two forms: specific personal jurisdiction and general personal jurisdiction. As the Supreme Court has explained:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *See International Shoe*, 326 U.S., at 317, 66 S. Ct. 154. Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966) (hereinafter von Mehren & Trautman); *see* Brilmayer et al., *A General Look at General Jurisdiction*, 66 TEXAS L. REV. 721, 782 (1988) (hereinafter Brilmayer). In contrast to general, all-purpose

> jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *von Mehren & Trautman* 1136.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (U.S. 2011); *see Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 751, 187 L. Ed. 2d 624 (2014) (discussing "the distinction between general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction"). General personal jurisdiction arises much less frequently than specific jurisdiction because it is not anchored to the underlying events or transactions giving rise of the litigation itself. As the Court put it, "As this Court has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' *Shaffer* [*v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)], 433 U.S., at 204, 97 S. Ct. 2569, i.e., specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 758, 187 L. Ed. 2d 624 (2014) (internal footnotes omitted).

The court has little doubt that it can exercise *specific* personal jurisdiction over the defendants with respect to the real estate sales contract and promissory note precisely because the real property at issue is located here. There is a "relationship among the defendant[s], the forum, and the litigation" arising from the disputes over the ownership of real property located in Alabama. In any event,

as to the original complaint, none of the defendants[4] challenged personal jurisdiction, thus waiving it.[5] The existence of *specific* personal jurisdiction (or the waiver of challenges to it) does not extend jurisdiction to controversies unrelated to the facts and events underlying the controversy on which specific personal jurisdiction rests. Specific personal jurisdiction extends only to the events, facts, and transactions that link the controversy to the forum State. Controversies unrelated to the forum nexus are not within the court's specific personal jurisdiction.

There is serious doubt whether the court can exercise personal jurisdiction over the claims sought to be added by the unauthorized amended complaint. Unlike the claims in the original complaint dealing with title to a piece of Alabama real property, the amended complaint is concerned entirely with alleged fraud or breach of a contract for the purchase of corporate stock in corporations not located in or incorporated in Alabama. It appears that the contract was negotiated and executed somewhere other than Alabama, among parties who have no connection

---

[4] The defendants in the original complaint were Southern Star LLC, and Wedelstedt, individually and as personal representative of the Estate of Lynda Entratter. The complaint alleged that either Southern Star or the Estate claimed ownership of the real property at issue. Thus, all defendants, except perhaps Wedelstedt individually, had a rational and factual link to the litigation and the forum.

[5] After the original complaint was filed in state circuit court, the defendants removed it to this court on the basis of diversity subject matter jurisdiction and filed an answer. Failure to preserve the defense of lack of personal jurisdiction as to the original complaint in either the answer or a pre-answer Rule 12(b)(2) motion waived the defense as to the original claims in the case.

to Alabama. The controversy over the sale of corporate stock appears to have no nexus to Alabama, and for that reason *specific* personal jurisdiction likely does not exist over that controversy. It is also unlikely that general personal jurisdiction exists. As *Goodyear* and *Daimler* explained, for general personal jurisdiction to exist, the defendants must have "affiliations with the State [that] are so 'continuous and systematic' as to render them essentially at home in the forum State." The court has doubts that that is true here. It does not appear that any of the proposed defendants conduct such "continuous and systematic" activities in Alabama as to render them essentially at home here.

In any event, though, this determination must await the proper filing of a motion for leave to amend the complaint and any response by the defendants. Because lack of personal jurisdiction is a waivable defense, the defendants could elect not to challenge the lack of personal jurisdiction, and even if they do challenge it, the plaintiff should have a fair opportunity to be heard on the issue.

**II. Order**

Consistent with these considerations, the motion to strike the amended complaint is GRANTED without prejudice to the right of the plaintiff to file a proper Rule 15(a) motion for leave to amend the complaint. If the plaintiff elects to file a motion for leave to amend, the motion, with the proposed amended complaint attached as an exhibit, shall be filed by March 26, 2018. In the event a

motion for leave to file an amended complaint is filed by the plaintiff, the defendants in this action may file a response to it by April 6, 2018.

The alternative motion to dismiss is DENIED as MOOT.

The defendants' motion to stay deadlines (Doc. 31) is DENIED as MOOT.

DONE this 9th day of March, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE