FILED
2018 Aug-28 PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GULF COAST VISUALS MANAGEMENT COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 2:17-cv-121-TMP ) |
| EDWARD J. WEDELSTEDT, individually; EDWARD J. WEDELSTEDT, as Personal Representative of THE ESTATE OF LYNDA ENTRATTER, deceased; SOUTHERN STAR, LLC, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

Before the court is the motion for leave to amend the complaint by the plaintiff, Gulf Coast Visuals Management Company, LLC, ("Gulf Coast"). (Doc. 47). The defendants, Edward J. Wedelstedt, both individually and as personal representative of the Estate of Lynda Entratter ("the Estate"), and Southern Star, LLC, have filed their opposition to the motion (doc. 50), to which Gulf Coast has filed a reply (doc. 51). Additionally, the defendants were given leave to and have filed a sur-reply. (Doc. 56). The motion for leave and the various responses to it raise a number of issues the court will attempt to address in logical order.

## I. Procedural Background

The original complaint removed to this court named as defendants Edward J. Wedelstedt, individually, Edward J. Wedelstedt as the personal representative of the Estate of Lynda Entratter, deceased ("the Estate"), and Southern Star LLC, an Alabama limited liability company.[1] It alleged that either Southern Star or the Estate was the owner of a certain described piece of real property in Jefferson County, Alabama, and that the plaintiff "and Southern Star entered into a verbal agreement, pursuant to which Southern Star agreed to sell and [plaintiff] agreed to purchase the property (real estate from which the [plaintiff's] business was operated) for the amount of $115,000." (Doc. 1-1, ¶ 5). Pursuant to the verbal agreement, the plaintiff made a down payment and "agreed to make monthly payments thereafter until the purchase price was paid, and the parties shared an amortization schedule and related closing documents." Oddly, the complaint then alleges that "[t]he *Estate* executed a deed conveying the property to Owner… which deed through inadvertence, oversight or confusion, has not been delivered to [the plaintiff], or if delivered, has been lost." (Italics added for emphasis). The complaint goes on to allege that "[t]he Estate claims, or is reputed to claim, some right to or interest in the property, namely, that the Estate is the owner of the same

---

[1] According to the defendants' *First Amended Answer and Affirmative Defenses*, the sole member of Southern Star, LLC, was Lynda Entratter, a deceased citizen of Georgia. See Doc. 15, ¶ 4.

and [the plaintiff] [is] the tenant." (*Id.* at ¶ 10). Thus, as originally filed, the controversy in this case was whether the agreement between the plaintiff and one or more of the defendants was purchase agreement, under which the plaintiff was buying the real property, or merely a lease. The complaint pleaded three claims for relief: quiet title in Count I, specific performance in Count II, and an equitable lien for the value of improvements in the property in Count III. Attached as an exhibit to the complaint is what appears to be a statutory warranty deed from Edward J. Wedelstedt, as personal representative of the Estate of Lynda Entratter, to the plaintiff, Gulf Coast Visuals Management Company, LLC, date December 21, 2011.

On March 26, 2018,[2] the plaintiff filed its *Motion for Leave to File Amended Complaint and Add Third-Party Defendant* (doc. 47), to which was attached a copy of the *Amended and Third-Party Complaint* proposed to be filed. The proposed amended complaint greatly expands the factual and legal scope of this action, adding twelve new counts, including a purported interpleader count against the United States and a securities fraud count under the Alabama Securities Act, Alabama Code § 8-6-1 *et seq.*, the Michigan Uniform Securities Act, the Securities Act of 1933, and Section 10b of the Securities Exchange Act of 1934.

---

[2] The plaintiff has filed an amended complaint earlier, without leave, on July 31, 2017, which was stricken by the court on March 9, 2018, because the plaintiff did not seek leave to file the amended complaint. (Doc. 44). At this point, the original complaint filed in state court and removed to this court remains the operative pleading in the case.

Factually, the proposed amended complaint shifts its focus from a contract dispute over the alleged sale of a piece of Alabama real estate to a dispute over the sale of ownership of five closely-held corporations. In sum, the proposed amended complaint alleges that, on April 20, 2011,[3] a "Stock Purchase Agreement"[4] was executed between the plaintiff and defendant Wedelstedt as the personal representative of the Estate under which the Estate (through Wedelstedt as the personal representative) conveyed to the plaintiff 100% of the stock in five closely-held corporations owned by the Estate.[5] In return, the plaintiff signed a promissory note in favor the Estate in the amount of $1,593,662.72, which called for payments to the Estate in the amount $20,000.00 per month. To secure payment of the promissory note, the plaintiff pledged the stock in these five companies, and Robert DePiano was named the "Pledgee" to hold the stocks until the promissory

---

[3] The proposed amended complaint gives different dates for this agreement. At paragraph "a.," the date of the "Purchase Agreement" is given as April 20, 2011, but at paragraph 5, it is alleged that the parties entered into the Purchase Agreement in 2010. Then, in paragraph 8, the plaintiff alleges that it "exercised its option to purchase stock" in five closely-held companies on May 2, 2011, and that the stock sale closed on October 7, 2011.

[4] Doc. 41-1.

[5] The five companies are identified in the complaint as Anwar Enterprises, Inc.; Lagrange Trading, Co.; Business Financial Services of Knoxville, Inc.; Richland Book Mart, Inc.; and Western Adult Enterprises, Inc. All five companies are in the business of operating "adult bookstores," and although the states of incorporation for each are not identified in the proposed amended complaint, two of the corporations (Anwar and Western Adult) operate adult bookstores in Birmingham, Alabama. The other three operate stores in Kenner, Louisiana, and Knoxville, Tennessee. Only Western Adult Enterprises, Inc., is identified consistently as being incorporated in Alabama. (Doc. 41-1). At various places within the documents, Anwar Enterprises, Inc., is identified variously as a Missouri corporation and as an Alabama corporation. It is not clear which is true.

note was paid. (Doc. 41-1, p. 93). At the same time this Purchase Agreement was entered into, the parties also reached the separate verbal agreement for the plaintiff to purchase the real property at issue in the original complaint.

According to the proposed amended complaint, events since the formation of the Stock Purchase Agreement have caused the plaintiff to question whether, in fact, Wedelstedt, as the personal representative of the Estate, is capable of conveying good and clear title to the stock. The proposed complaint points to Wedelstedt's criminal history, his refusal to honor the Real Estate contract, his alleged use of shell charitable organizations to avoid federal income taxes, and his testimony in the Michigan lawsuit (doc. 47-1, ¶ 23) as evidence that Wedelstedt either has repudiated the Stock Purchase Agreement or was never able to perform under it to convey the stocks with clear title. Due to concerns about the stock sale, "Gulf Coast sent the demand letter to defendants, seeking assurances that, when Gulf Coast paid the remainder of the amounts due under the Stock Sale, the Stock would be released from escrow. When the defendants failed to provide such assurances, Gulf Coast filed this amended complaint." (Doc. 47-1, ¶ 17). On June 30, 2017, the plaintiff sent a letter to Wedelstedt, demanding assurances that the Estate will comply with the Stock Purchase Agreement and convey good and clear title to the stock once all payments are made by the plaintiff and that the stock is not subject to tax liens. Although some assurances were provided, the

plaintiff alleges that they did not address the fundamental concerns about whether the Estate owned the stocks at issue and whether they are subject to tax liens.

Based on these allegations, the proposed amended complaint seeks to add the following new claims not pleaded in the original complaint:

> Count Four—**Declaratory Judgment** to require the defendants to give reasonable assurances of compliance with the stock sale agreement or to allow the plaintiff to suspend its payments or pay them into court.
>
> Count Five—**Breach of Contract** with respect to the Stock Purchase Agreement.
>
> Count Six—**Suppression** of material facts related to the formation of the Stock Purchase Agreement.
>
> Count Seven—**Fraud and Fraudulent Suppression** related to the ownership of the stocks at issue.
>
> Count Eight—**Securities Fraud** under federal and state law, related to "material misstatements [made] to Gulf Coast and the investing public which were contained in the Purchase Agreement and related documents…."
>
> Count Nine—**Civil Theft and Conversion**, alleging that the defendants have stolen and converted the moneys paid by the plaintiff under the Stock Purchase Agreement by diverting the moneys through shell charitable organizations controlled by Wedelstedt.
>
> Count Ten—**Fraudulent Transfers** in that "Wedelstedt accepted monies as personal representative of the estate and set up charitable entities like Eddie's kids in order to pay debts and avoid debts from the IRS and others."
>
> Count Eleven—**Misappropriation of Money** in that "Defendants misappropriated Gulf Coast's money, refused to honor the Real estate Sale or Purchase Agreement, and Wedelstedt is using Gulf Coast's

money for his own personal gain."

Count Twelve—**Civil Conspiracy** in that "Defendants, Olsafsky, and possibly others undertook concerted action to achieve an unlawful purpose or a lawful purpose by unlawful means, including to defraud Gulf Coast and obtain monies from Gulf Coast."

Count Thirteen—**Wrongful Appropriation of Corporate Opportunity, Constructive Trust, and Accounting** in that "Defendants have wrongfully diverted assets of Gulf Coast to defendants' benefit, accepted Payments without intent to deliver the Stock to Gulf Coast when the Payments are completed, and on information and belief conspired with Olsafsky to divert Gulf Coast assets to various defendants," and thereby have unjustly enriched themselves to the plaintiff's detriment.

Count Fourteen—**Conspiracy to Misappropriate Assets of Corporation and for Accounting and Appointment of Receiver** in that "On information and belief, Wedelstedt, acting alone or in conjunction with various other defendants, and being in control of the other defendants, unlawfully and with fraudulent intent, conspired and connived to, despoil Gulf Coast it of its assets and dispose of the same to their individual benefit and profit, to the damage of Gulf Coast, its stockholders and plaintiffs."

Count Fifteen—**Interpleader** to allow the plaintiff to make its payments under the stock Purchase Agreement to the Clerk of Court because the United States may have tax liens against the Estate or the stock and continuing to make payments to Wedelstedt as the personal representative of the Estate may subject the plaintiff to double or multiple payments. On this count, plaintiff seeks to add the United States as "third-party defendant."

The defendants oppose the motion for leave to amend on several different grounds. They argue the motion should be denied because (1) the plaintiff has not made the proper "good cause" showing necessary to allow the amendment; (2) the

court lacks subject-matter jurisdiction over the claims sought to be added because they are not yet ripe for Article III purposes; (3) the court lacks specific or general personal jurisdiction over the defendants with respect to the claims sought to be added; (4) the proposed amended complaint is rife with scandalous and impertinent materials; (5) amendment would be futile because the proposed amended complaint fails to state a claim for relief beyond those contained in the original complaint.

## II. Standard of Review for Amendments to Pleadings

As the court has explained in previous Orders, the standard by which a court is to assess a motion for leave to amend a complaint depends upon whether the motion is made before or after the expiration of a deadline for doing so established in a Rule 16(b) scheduling order. In sum, if the motion is made before the deadline expires, it is addressed under the liberal standards of Rule 15(a) of the Federal Rules of Civil Procedure. If, however, the motion for leave is filed after the expiration of such a deadline, the "good cause" standard of Rule 16 applies. See *Kendall v. Thaxton Road, LLC*, 443 F. App'x 388, 393 (11th Cir. 2011).

In the instant case, it is clear that this proposed amendment comes well after the July 31, 2017, deadline for the plaintiff to seek to amend the pleadings, as set in the court's Rule 16(b) scheduling order. (Doc. 14). That is the date suggested by the parties in their Report of Parties Planning Meeting (doc. 12), which was

adopted by the court. The plaintiff argues that it filed its first amended complaint on July 31, 2017, but it did not seek leave to do so, and the court struck it. To the extent the plaintiff argues it should be given the retroactive benefit of the July 31 filing date, that filing was a "nullity" and of no effect at all. See *Hoover v. Blue Cross & Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir. 1988) ("[I]f an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval." (Quoting 6 FEDERAL PRACTICE & PROCEDURE § 1485 at 421 (1971))); see also Continental Illinois Nat. Bank & Trust Co. of Chicago v. Four Ambassadors, 599 F. Supp. 534, 536 (S.D. Fla. 1984) (an amended pleading filed without leave of court or consent of the opposing parties is a "nullity"). It is true that some courts consider whether such amendments would be allowed if leave had been sought, but that did not occur here. Gulf Coast was required to resubmit its proposed amendment with a motion for leave to do so, and by then the deadline had passed.[6] As a result, for leave to file the instant proposed amended complaint,

---

[6] The court does not mean to imply that Gulf Coast waited an unreasonably long time to resubmit its proposed amendment. It took the court until March 2018 to strike the proposed amendment, and the plaintiff filed its motion for leave to submit the instant proposed amendment only eleven days after the court's ruling. The greatest part of the delay was the court's fault, not the plaintiff's. In any event, however, because the first attempt to amend the complaint was filed on the last day of the time allowed in the scheduling order, the court's striking of the amendment inevitably put any resubmission after the deadline. Even if the court had stricken the amended

the standard of Rule 16, applicable to amending the scheduling order, is the standard the court must consider. The plaintiff must show "good cause" to amend the complaint.

The court is not convinced that good cause exists to deviate from the scheduling order and grant leave to amend the complaint. The original complaint alleging the dispute over title to a piece of real property was filed in the Jefferson County Circuit Court on December 20, 2016, and removed to this court on January 23, 2017. The essential facts of the plaintiff's claims related to the Stock Purchase Agreement were known to the plaintiff at least by October 26, 2016, when Wedelstedt's deposition was taken in the Michigan lawsuit that was already underway. By that time—more than nine months before the attempted amendment of the complaint on July 31, 2017—the plaintiff already knew of the dispute concerning the Alabama real estate, either knew or should have known about Wedelstedt's questionable criminal history, knew or should have known of the status of tax liens related to Wedelstedt, and knew or should have known of Wedelstedt's relationship to the alleged shell charities. Indeed, in the proposed amended complaint, the defendant points to Wedelstedt's October 2016 deposition testimony as an alleged "repudiation" of the Stock Purchase Agreement. (Doc. 47-1, ¶ 15). Two months before the instant lawsuit was commenced in the Jefferson

---

complaint the very next day after its filing, any resubmission would have been after the July 31 deadline.

County Circuit Court and three months before it was removed to this court, the plaintiff possessed the essential facts necessary to plead the claims it did not include in the original complaint and which it now seeks to add by amendment. The plaintiff has offered no explanation, much less "good cause," why these claims could not have been included in the original complaint or soon after the removal of the case to this court. While it is true that it was not until June 2017 that the plaintiff wrote to counsel for Wedelstedt seeking assurances that the Stock Purchase Agreement was not a fraud and would be fulfilled by Wedelstedt, there is no reason why these assurances could not have been sought many months earlier. Again, by no later than October 26, 2016, when Wedelstedt was deposed in the Michigan lawsuit, the plaintiff was aware of his alleged "repudiation" of the Stock Purchase Agreement. Likewise, all of the other evidence related to Wedelstedt's criminal past, his use of alleged shell charities, his tax liens, and concerns about the legitimacy of the Estate in Georgia were all either known to the plaintiff or could have been discovered with due diligence before the instant action was ever filed. Given the dilatoriness,[7] there simply is no "good cause" for allowing an

---

[7] Although the court has reviewed the instant motion under Rule 16's "good cause" standard, the court likely would have denied the motion for leave to amend under Rule 15's liberal standard as well, if it were to apply instead. As noted above, the plaintiff was aware (or should have been aware) of the facts set forth in the proposed amended complaint at the time of the filing of the original complaint. Waiting to the last day for seeking leave to amend under the scheduling order entered by the court was unduly dilatory. See National Service Industries, Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982) (no abuse of discretion to deny leave to amend pleading where party knew of facts supporting proposed amendment when it filed

11

amendment to add facts and claims that could have been pleaded eighteen months earlier when the lawsuit commenced.[8]

The motion for leave to amend the complaint (doc. 47) is DENIED.

Likewise, the plaintiff's motion to make payments into the Registry of the court (doc. 38) in lieu of the monthly payments made to the defendants as alleged in the proposed amended complaint is DENIED. As the court has denied the motion for leave to amend the complaint, the largest portion of the monthly payments ($20,000.00 of the monthly $21,500.00) does not relate to any issue or claim now before the court. As to the remaining $1,500.00 paid per month, that sum either is payment toward purchase of a parcel of real estate or rental payments (depending on whose perspective is correct) and can continue to be made. Any remedy necessary to resolve the issues in this lawsuit can account for such payments at that time.

DONE this 28th day of August, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

original pleading); Ferrell v. Busbee, 91 F.R.D. 225, 231 (N.D.Ga.1981) ("Plaintiff had to know of the facts upon which the amendment was based at the time the complaint was filed.").

[8] The court expresses no opinion on the other grounds argued by the defendants for denying the motion for leave to amend. Whether the plaintiff's claims may be ripe for adjudication and whether there is personal jurisdiction over the defendants must be litigated at another time in another action.